UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **SHANNON POWERS**, **LACY WOODS**, **NICOLE GROSKOPF**, **JUSTIN EVANS**, **DEMYA JOHNSON** and **JULIUS BRYANT**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**ONE TECHNOLOGIES, LLC,**<br><br>Defendant. | Civil Action No. 3:21-cv-2091<br><br>**CLASS ACTION COMPLAINT** |

## INTRODUCTION

1.     This action arises out of Defendant, One Technologies, LLC's ("Defendant" or "One Technologies"), practice of sending autodialed telemarketing text messages to individuals on the National Do-Not-Call Registry without prior express written consent (or any consent whatsoever), in violation of two separate provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), provisions of the North Carolina General Statute § 75-100, *et seq* and provisions of the Texas Business and Commerce Code § 301.001, *et seq*.

2.     One Technologies has a long history of skirting the law to promote its business – a business that consists of offering consumers "free" credit scores that, of course, are not really "free."

3.     For example, One Technologies was sued by the FTC in 2014 for engineering an online scheme that victimized consumers by luring them with "free" access to their credit scores and then billing them a recurring $29.95 monthly fee for a credit monitoring service they never

ordered.[1]

4.    That lawsuit concluded in a settlement that returned $22,000,000 in refunds to consumers across the country.

5.    Apparently, One Technologies maintains this same scheme, albeit with the inclusion of an additional token disclaimer, which continues to result in dozens of recent complaints being submitted by consumers regarding these same unauthorized monthly charges.[2]

6.    One Technologies' business is a volume business – the more consumers that sign up for its monitoring service (whether knowingly or not), the more money One Technologies makes.

7.    As a result, One Technologies has employed a marketing strategy that allows it to blanket potential consumers with unsolicited emails and text messages promoting its services, while at the same time feigning ignorance and claiming it is not responsible for the very actions that sustain its business.

8.    With what are almost certainly extremely low conversion rates on email and text message marketing, One Technologies' viability depends on its ability to reach as many consumers as possible.

9.    Thus, One Technologies engages an army of "affiliates," with zero compliance monitoring, to do its marketing for it via unsolicited emails and text messages.

10.    When those "affiliates" consistently break the law, One Technologies buries its head in the sand and claims that it contractually prohibits these affiliates from breaking the law

---

[1] *See e.g.*,  https://www.ftc.gov/news-events/press-releases/2016/09/ftc-return-almost-20-million-consumers-lured-credit-monitoring (last accessed on June 3, 2021).
[2]  https://www.bbb.org/us/tx/dallas/profile/internet-marketing-services/one-technologies-llc-0875-90008571/customer-reviews (last accessed on June 3, 2021).

and that it has no knowledge of its affiliates' actions.[3]

11.    Yet, such an affiliate marketing program requires One Technologies to extensively track how a consumer (that ultimately makes a purchase) arrives at its website (via the links provided by its affiliates) so that it may identify the affiliate that must be paid a commission.

12.    One Technologies' practice of outsourcing the act of executing the unlawful text messages to third parties would not and does not absolve them from liability under the TCPA.

13.    On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules, 28 F.C.C. Rcd. 6574, 6588 (F.C.C. 2013) ("Dish Network").

---

[3] *See, e.g.*, *ZooBuh, Inc. v. One Technologies, LLC*, 2:14-cv-00342-BSJ (D. Utah 2014); *XMission, L.C. v. One Technologies, LLC*, 2:15-cv-00578-DAK (D. Utah. 2015); *Mark Hoffman v. One Technologies, LLC*, 2:16-cv-01006-RSL (W.D. Wa. 2016); *Julie Durward v. One Technologies, LLC*, 2:19-cv-06371-GW-AGR (C.D. Cal. 2019); *Aaron Hicks v. One Technologies, LLC*, 8:20-cv-01856-DOC-DFM (N.D. Cal. 2020), *Joshua Grossman v. One Technologies, LLC*, 2:20-cv-09077-GW-JC (C.D. Cal. 2020); *Theresa Carlson v. One Technologies, LLC*, 2:18-cv-03253-KJM-EFB (E.D. Cal. 2018); *Kai Johnson v. One Technologies, LLC*, 2:20-cv-09077-GW-JC (C.D. Cal. 2020).

14.     Plaintiff Shannon Powers has done no business with One Technologies and has never provided One Technologies prior express written consent to send telemarketing text messages to his telephone number.

15.     Plaintiff Lacy Woods has done no business with One Technologies and has never provided One Technologies prior express written consent to send telemarketing text messages to her telephone number.

16.     Plaintiff Nicole Groskopf has done no business with One Technologies and has never provided One Technologies prior express written consent to send telemarketing text messages to her telephone number.

17.     Plaintiff Justin Evans has done no business with One Technologies and has never provided One Technologies prior express written consent to send telemarketing text messages to his telephone number.

18.     Plaintiff DeMya Johnson has done no business with One Technologies and has never provided One Technologies prior express written consent to send telemarketing text messages to her telephone number.

19.     Plaintiff Julius Bryant has done no business with One Technologies and has never provided One Technologies prior express written consent to send telemarketing text messages to his telephone number.

20.     Plaintiffs' telephone numbers were registered on the National Do-Not-Call Registry at the time of the text messages.

21.     Accordingly, Plaintiffs bring this TCPA action on behalf of themselves and two classes of similarly situated individuals under 47 U.S.C. §§ 227(b) and 227(c), three classes of similarly situated individuals under N.C. Gen. Stat. §§ 75-102(c)(1), 75-104(a) and 75-105(b), and

two classes of similarly situated individuals under Texas Business & Commerce Code §§ 302.302(a) and 305.053.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

23.     This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a), because it is so closely related to the federal claim that they form a single case or controversy.

24.     This Court has jurisdiction over Defendant because Defendant conducts business transactions in this District and has committed tortious acts in this District.

25.     Venue is proper in this District because Defendant conducts significant amounts of business transactions within this District and because some of the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## PARTIES

26.     Plaintiff Powers is, and at all times mentioned herein was, a citizen and resident of Pineville, North Carolina.

27.     Plaintiff Powers is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

28.     Plaintiff Powers is, and at all times mentioned herein was, a "telephone subscriber" as defined by N.C. Gen. Stat. § 75-101(11).

29.     Plaintiff Woods is, and at all times mentioned herein was, a citizen and resident of Somerville, Alabama.

30.     Plaintiff Woods is, and at all times mentioned herein was, a "person" as defined by

47 U.S.C. § 153(39).

31.     Plaintiff Johnson is, and at all times mentioned herein was, a citizen of the United States.

32.     At all times mentioned herein, Plaintiff Johnson was a resident of Decatur, Alabama.

33.     Plaintiff Johnson is currently a temporary resident of Sweden.

34.     Plaintiff Johnson is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

35.     Plaintiff Groskopf is, and at all times mentioned herein was, a citizen and resident of Willis, Texas.

36.     Plaintiff Groskopf is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

37.     Plaintiff Groskopf is, and at all times mentioned herein was, a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27)

38.     Plaintiff Groskopf is, and at all times mentioned herein was, a "purchaser" as defined by Tex. Bus. & Com. Code § 302.001(3).

39.     Plaintiff Evans is, and at all times mentioned herein was, a citizen and resident of Spring, Texas.

40.     Plaintiff Evans is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

41.     Plaintiff Evans is, and at all times mentioned herein was, a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27)

42.     Plaintiff Evans is, and at all times mentioned herein was, a "purchaser" as defined

6

by Tex. Bus. & Com. Code § 302.001(3).

43.    Plaintiff Bryant is, and at all times mentioned herein was, a citizen and resident of Arlington, Texas.

44.    Plaintiff Bryant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

45.    Plaintiff Bryant is, and at all times mentioned herein was, a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27)

46.    Plaintiff Bryant is, and at all times mentioned herein was, a "purchaser" as defined by Tex. Bus. & Com. Code § 302.001(3).

47.    Defendant is, and at all times mentioned herein was, a Texas corporation headquartered at 8144 Walnut Hill Ln, Suite 600, Dallas, TX 75231.

48.    Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

49.    Defendant is, and at all times mentioned herein was, a "telephone solicitor" as defined by N.C. Gen. Stat. § 75-101(10).

50.    Defendant is, and at all times mentioned herein was, a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27).

51.    Defendant is, and at all times mentioned herein was, a "seller" as defined by Tex. Bus. & Com. Code § 302.001(5).

## GENERAL FACTUAL ALLEGATIONS

52.    Defendant, or someone acting on its behalf and at its direction, sends automated text messages marketing its credit score monitoring services.

53.    These text messages come from changing 10-digit numbers or "gibberish" seeming

email address, but all follow the same pattern: they all contain a link that, when clicked, redirects to a landing page containing another link that, when clicked, re-directs to Defendant's Freescore360.com page.

54.     Upon information and belief, the 10-digit numbers used by Defendant, or their agent, are "spoofed" or include misleading or inaccurate caller identification information.

55.     Because each of these text messages were advertising Defendant's services, they constitute telemarketing messages and telephone solicitations.

56.     Each of these text messages were sent as part of an automated campaign that generates or pulls numbers from a database and, with limited to no human intervention, sends out mass text messages.

57.     Some of these text messages invite the recipient to text "STOP" or "QUIT" to stop the text messages, which is a process indicative of autodialed text messaging.

58.     These messages also use gibberish email addresses or short-lifespan/one-way phone numbers (i.e., numbers that are not able to be called or texted back after they're used to send messages), which is also indicative of an automated text messaging campaign.

**PLAINTIFF POWERS FACTUAL ALLEGATIONS**

59.     Plaintiff Powers is the sole and primary user of a cellular telephone number ending in 9717.

60.     Plaintiff Powers' telephone number ending in 9717 has been on the National Do-Not-Call Registry since November 2007.

61.     Plaintiff Powers received Defendant's text messages described herein.

62.     These text messages include texts on July 30, 31 (twice), August 2 (twice), and August 3, 2020.

63.     These text messages did not state clearly the identity of the telephone solicitor and identify the individual making the telephone solicitation at the beginning of the solicitation.

64.     At or around the time the text messages were sent, clicking on the link contained therein, redirected to a landing page containing another link that, when clicked, re-directed to Defendant's Freescore360.com page.

65.     Plaintiff Powers never provided prior express written consent (or any consent) to Defendant for these text messages.

## PLAINTIFF WOODS FACTUAL ALLEGATIONS

66.     Plaintiff Woods is the sole and primary user of a cellular telephone number ending in 5269.

67.     Plaintiff Woods' telephone number ending in 5269 has been on the National Do-Not-Call Registry since September 2013.

68.     Plaintiff Woods received Defendant's text messages described herein.

69.     These text messages include texts on September 28, 2020 and November 23, 2020.

70.     At or around the time the text messages were sent, clicking on the link contained therein, redirected to a landing page containing another link that, when clicked, re-directed to Defendant's Freescore360.com page.

71.     Plaintiff Woods never provided prior express written consent (or any consent) to Defendant for these text messages.

## PLAINTIFF JOHNSON FACTUAL ALLEGATIONS

72.     Plaintiff Johnson is the sole and primary user of a cellular telephone number ending in 8330.

73.     Plaintiff Johnson's telephone number ending in 8330 has been on the National Do-

Not-Call Registry since December 2019.

74.     Plaintiff Johnson received Defendant's text messages described herein.

75.     These text messages include texts on March 30, 2021, April 6, 2021, April 11, 2021, April 30, 2021, May 22, 2021 and July 7, 2021.

76.     At or around the time the text messages were sent, clicking on the link contained therein, redirected to a landing page containing another link that, when clicked, re-directed to Defendant's Freescore360.com page.

77.     Plaintiff Johnson replied "STOP" to each of the text messages she received, however they continued.

78.     On April 23, 2021, Plaintiff Johnson wrote to Defendant and requested to be added to Defendant's internal Do-Not-Call List.

79.     Despite her request, she received text messages on May 22, 2021 and July 7, 2021.

80.     Plaintiff Johnson never provided prior express written consent (or any consent) to Defendant for these text messages.

## **PLAINTIFF GROSKOPF FACTUAL ALLEGATIONS**

81.     Plaintiff Groskopf is the sole and primary user of a cellular telephone number ending in 0604.

82.     Plaintiff Groskopf's telephone number ending in 0604 has been on the National Do-Not-Call Registry since June 30, 2003.

83.     Plaintiff Groskopf received Defendant's text messages described herein.

84.     These text messages include texts on September 8, 2020 (three times) and September 26, 2020 (once).

85.     At or around the time the text messages were sent, clicking on the link contained

therein, redirected to a landing page containing another link that, when clicked, re-directed to Defendant's Freescore360.com page.

86.    Plaintiff Groskopf never provided prior express written consent (or any consent) to Defendant for these text messages.

87.    On September 14, 2020, Ms. Groskopf wrote to Defendant and notified Defendant of its TCPA violations.

88.    Despite this notice, Ms. Groskopf received another illegal text message on September 26, 2020.

## PLAINTIFF EVANS FACTUAL ALLEGATIONS

89.    Plaintiff Evans is the sole and primary user of a cellular telephone number ending in 8933.

90.    Plaintiff Evans' telephone number ending in 8933 has been on the National Do-Not-Call Registry since January 2005.

91.    Plaintiff Evans received Defendant's text messages described herein.

92.    These text messages include texts on November 18, 2020 and November 19, 2020.

93.    At or around the time the text messages were sent, clicking on the link contained therein, redirected to a landing page containing another link that, when clicked, re-directed to Defendant's Freescore360.com page.

94.    Plaintiff Evans never provided prior express written consent (or any consent) to Defendant for these text messages.

## PLAINTIFF BRYANT FACTUAL ALLEGATIONS

95.    Plaintiff Bryant is the sole and primary user of a cellular telephone number ending in 7782.

96.     Plaintiff Bryant's telephone number ending in 7782 has been on the National Do-Not-Call Registry since March 2019.

97.     Plaintiff Bryant received Defendant's text messages described herein.

98.     These text messages include texts on May 5, 2020, May 11, 2020 and May 12, 2020.

99.     At or around the time the text messages were sent, clicking on the link contained therein, redirected to a landing page containing another link that, when clicked, re-directed to Defendant's Freescore360.com page.

100.     Plaintiff Bryant never provided prior express written consent (or any consent) to Defendant for these text messages.

## **DEFENDANT'S LIABILITY**

101.     Defendant failed to obtain prior express consent—written or otherwise—to send the texts alleged above.  Prior express written consent is required for telemarketing calls, which is defined as:

> [A]n agreement in writing, bearing the signature of the person called that clearly authorized the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisement or telemarketing messages to be delivered.

47 C.F.R. § 64.1200(f)(9).

102.     Defendant used an automatic telephone dialing system, as that term is defined under 47 U.S.C. § 227(a)(1), when it sent the robotexts to Plaintiffs and the Class members.

103.     Defendant's system uses random or sequential number generation to "produce" numbers to be texted, upon information and belief.

12

104.   Upon information and belief, Defendant's system produces numbers to be texted by generating those numbers from a main database where numbers are initially "stored" into a temporary sub-database, and it is from that sub-database that numbers are texted.

105.   In other words, when Defendant runs a robotexting "campaign" to text new leads or prospective customers, it does not text every single number in the database.

106.   Instead, its application is designed to filter through, in some order (random or sequential), the telephone numbers, and to generate those numbers "chosen" into the sub-database.

107.   Upon information and belief, Defendant's application uses a number generator to move through the "main" database and pull numbers to be called.

108.   For example, Defendant's system can check database row 1 to see if it qualifies to be "pulled" into the sub-database to be called during a particular done, and then, when that is done, move to "row 2."

109.   Upon information and belief, the application moves its review from row 1 to row 2 using a function similar to the auto-increment function detailed previously—i.e. by using a sequential number generator.

110.   Upon information and belief, Defendant's system also has the capacity to use random numbers to randomly select rows from the database to be texted (e.g. to text 100 random people, Defendant's system would select 100 random numbers and use those numbers to pull the corresponding record from the database).

111.   The telephone numbers identified are then "produced" into the sub-database to be texted.

112.   Further, in this design, Defendant's "main" database simply provides the range of numbers to be generated into the sub-database.

113.    The system produces numbers into the sub-database in some random or sequential order, depending on the parameters of a particular robotexting campaign.

114.    It is these randomly or sequentially produced (from the main database into the sub-database) telephone numbers in the sub-database that are actually texted.

115.    Alternatively, Defendant's system has the capacity to generates numbers to be robotexted because it generated the Plaintiffs' numbers because Plaintiffs never provided their numbers to Defendat.

116.    Robotexts, such as the ones made by Defendant, are subject to the TCPA. *See* Fed. Commc'ns Comm., Enforcement Advisory No. 2016-06, DA 16-1299, *Robotext Consumer Protection: Text Message Senders Must Comply With the Telephone Consumer Protection Act* (Nov. 18, 2016).

117.    Defendant, through persons whose acts are attributed and imputed to Defendant, including through principles of direct liability and vicarious liability, used equipment which has the "capacity to use a random or sequential number generator to either store or produce phone numbers to be called." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1173 (2021).

118.    Accordingly, each of Defendant's telemarketing text messages to Plaintiffs using an automatic telephone dialing system violated 47 U.S.C. § 227(b).

119.    For violations of 47 U.S.C. § 227(b), Plaintiff is entitled to a minimum of $500 per text message.

120.    Plaintiff is entitled to $1,500 per text message if Defendant's actions are found to be knowing or willful.

121.    47 C.F.R. § 64.1200(c)(2) prohibits telephone solicitations to telephone numbers on the National Do Not Call Registry.

122.    Defendant repeatedly violated this rule by placing telephone solicitations to telephone numbers on the National Do-Not-Call registry, including Plaintiffs' numbers.

123.    For violations of 47 C.F.R. § 64.1200(c), Plaintiff is entitled to an additional $500 per text message.

124.    Plaintiff is entitled to an additional $1,500 per text message if Defendant's actions are found to be knowing or willful.

125.    47 C.F.R. § 64.1200(d) requires that a company implement certain minimum policies and procedures prior to making telemarketing calls.

126.    These policies and procedures include maintaining a written policy, available upon demand, for maintaining a do-not-call list; training personnel engaged in telemarketing; and recording and honoring do-not-call requests when made.

127.    Defendant violated this rule by not having such policies and training, and failing to honor do-not-call requests– including as evidenced by the continued texts to Plaintiff Johnson after she directly asked not to be contacted.

128.    For violations of 47 C.F.R. § 64.1200(d), Plaintiff is entitled to an additional $500 per text message.

129.    Plaintiff is entitled to $1,500 per text message if Defendant's actions are found to be knowing or willful.

130.    Plaintiffs have suffered concrete harm because of Defendant's unwanted and unsolicited telemarketing text messages, including, but not limited to:

- Device storage;

- Data usage;

- Lost time tending to and responding to the unsolicited text messages;

15

- Invasion of Privacy; and

- Nuisance.

131.    These forms of actual injury are sufficient for Article III standing purposes.

132.    Defendant is liable for each of the TCPA-violating robotexts under one or more of the following theories of liability: (1) Direct Liability, (2) Actual Authority, (3) Apparent Authority, (4) Ratification, (5) Joint Enterprise, and (6) Acting in Concert.

## DIRECT LIABILITY

133.    Defendant's scheme involves the use of unlawful robotexting, as alleged herein, to advance their pecuniary or business interests.

134.    Defendants directly initiated the unlawful robotexts to Plaintiffs and the other Class members and are directly liable for violating the TCPA.

135.    The robotexts sent to Plaintiffs and Class members contained hyperlinks that either directly or indirectly, automatically connected consumers' cellular telephones to Defendants' websites. The content of Defendants' websites was embedded in each of the text messages sent to Plaintiffs and the other Class members. Defendants therefore initiated and made the text messages and are directly liable for their transmission to Plaintiffs and Class members.

## ACTUAL AUTHORITY

136.    The TCPA incorporates federal common law agency principles.

137.    Defendant's practice of outsourcing the act of executing the unlawful robotexts to third parties would not and does not absolve them from liability under the TCPA.

138.    On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers may not avoid liability by outsourcing telemarketing:

16

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C. Rcd. 6574, 6588 (F.C.C. 2013) ("*Dish Network*").

139.    Defendant signed contracts with third parties, expressly authorizing and directing them to promote Defendant's websites and Defendant's products and services in accordance with specifications largely dictated by Defendants, but with certain unimportant or obvious aspects of the conduct unspoken.

140.    For example, Defendant may not have had control over the list of persons to whom texts would be sent and certain content of the messages.

141.    However, Defendant did not have to specify or direct the third parties to send communications by text message because the third parties were engaged in the business of sending robotexts to consumers.

142.    By signing contracts making the third parties authorized agents—expressly or impliedly—to execute unlawful robotexts to Plaintiffs and Class members and to convey hyperlinks to Defendant's websites, Defendant is liable for violations of the TCPA.

143.    For the important details of the transactions, Defendant had control over the third parties, but the third parties may have had a range of discretion to carry out the campaigns.

144.    That discretion was necessarily limited by implication, the third parties' economic incentive tied to the open rate of text messages, the third parties' businesses, and shared knowledge by Defendant and third parties regarding what methods most effectively increase the open rates of text messages.

145.    Indeed, the FCC acknowledges that vicarious liability is imposed where the caller/texter is "unsupervised." 28 F.C.C. Rcd. at 6588.

146.    During all relevant times, Defendant knew that the third parties were engaged in marketing practices constituting unlawful robotexting to direct traffic to Defendant's websites and Defendant's products or services, in accordance with the specifications and contractual provisions agreed to by Defendants and the robocallers.

147.    Defendants accepted, did not object to, and benefitted from the third parties'; violations of the TCPA.

148.    Defendants directed and controlled the conduct of the third parties by, *inter alia*, instructing and closely controlling the content of the robotexts and contacts with Plaintiffs and other robotext recipients, controlling and monitoring the timing, volume, direction, and manner of their conduct on behalf of Defendant, establishing and enforcing guidelines and specifications of the third parties' activities on behalf of Defendant, retaining rights to modify, amend, or withdraw the third parties' authority to act on behalf of Defendants in sending the unlawful robotexts, compensating the third parties for engaging in conduct that violated the TCPA, knowing that the third parties engaged in conduct that violated the TCPA or instructing them, impliedly or expressly, not to disclose information that, if known by Defendant, would establish Defendant's

knowledge that the third parties were engaged in conduct violating the TCPA, and providing feedback to the third parties regarding changes in practices.

149.    Due to the anonymous nature of robotexting, Plaintiffs have no access to information to identify the exact relationship between Defendants and the third parties who are the anonymous public facing arm of Defendant's unlawful robotexting scheme.

150.    However, Plaintiffs are not required to know this information at the pleading stage. *Dish Network* states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." 28 F.C.C. Rcd., at 6592–93 (¶ 46).

## APPARENT AUTHORITY

151.    *Dish Network* further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the [third party] access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

> 28 FCC Rcd. at 6592 (¶ 46).

152.    The integration of Defendant's websites with the robotexts used by the third parties was so seamless that it appeared to Plaintiffs that Defendant and the third parties were acting together as the same company.

153.    Defendant allowed the third parties to enter consumer information into their systems as well as to use Defendants' website links and website content to send to consumers.

154.    Defendant gave the third parties the authority to use their websites, hyperlinks, URLs, trade name, trademark, service mark, forms, contracts, and materials.

155.    The third parties did not independently identify themselves to Plaintiffs and the other Class members or provide their contact information.

156.    However, once the link was clicked, Defendant's participation in the text message could be discovered upon investigation.

## RATIFICATION

157.    Defendant knowingly and actively accepted business and contacts with consumers that originated through TCPA-violating robotexts placed by the third parties.

158.    Defendant ratified the third parties' TCPA violations by knowingly accepting the benefit of new contacts with consumers despite the fact that these consumers were generated through conduct that violates the TCPA.

159.    Alternatively, Defendant ratified the third parties' TCPA violations by knowing facts that would cause an ordinarily prudent person to inquire as to whether the third parties were complying with the TCPA, or create reasonable suspicion that the third parties do not comply with the TCPA, willfully turning a blind eye to those facts, and accepting the benefit of new consumer contacts despite the fact that they were generated through conduct that violates the TCPA.

20

160.     Defendant ratified the TCPA violations of the third parties by being willfully ignorant of the violations or by being aware that such knowledge was lacking and accepting the benefits of the TCPA violations.

161.     Defendant has received numerous complaints regarding the conduct of the entities that place texts on their behalf and Defendant refuses to alter their business practices at all in response.

162.     Defendant knew that the third parties engaged in conduct that violated the TCPA and generated numerous consumer complaints because of their telemarketing practices, but failed to terminate their relationship with the third parties and continued to do business with them.

**JOINT ENTERPRISE**

163.     Defendant and the third parties had a tacit agreement, or approved of after the fact, for the marketing of Defendant's services by means that violate the TCPA, including sending robotexts to numbers registered on the National Do Not Call Registry and to cellular or other phone numbers using an ATDS, all without obtaining prior express consent to engage in such conduct.

164.     Defendant and the third parties were part of a common enterprise and had a community of interest in marketing and promoting Defendant's websites, services, and products.

165.     Defendant and the third parties had an equal right to control the conduct thereof by specifying the type of people to be called, when to call, and what to say in the messages and calls.

166.     Defendant and the third parties entered into an agreement on how the proceeds of the unlawful activities would be apportioned among them.

167.     Defendant and the third parties are jointly and severally liable for the resulting damage caused by the third parties' TCPA-violating conduct.

## ACTING IN CONCERT

168.    Defendant acted in concert with the third parties when they sent robotexts in violation of the TCPA, as alleged herein.

169.    Defendant received the benefit of the consumer contacts generated by the third parties.

170.    Defendant compensated the third parties for engaging in conduct that violated the TCPA.

171.    Defendant and the third parties agreed and were part of a common design to robotext consumers in order to generate business and consumer contacts.

172.    Defendant had a tacit understanding that the third parties would engage in telemarketing activity that violated the TCPA.

173.    Defendant knew that the third parties' conduct was a breach of duty to Plaintiffs.

174.    Defendant gave the third parties substantial assistance in accomplishing the tortious result, including compensating the third parties for generating respondents pursuant to robotexts and giving instructions on the content, timing, direction, volume, and manner of the text messaging activities.

175.    Defendants furthered the tortious conduct by their cooperation, and lending aid to the third parties, and adopting the third parties' actions for their own benefit.

176.    Defendant's own conduct constitutes a breach of duty to Plaintiffs.

177.    Each Plaintiff's injury is indivisible.

178.    Defendant acted tortiously, and the harm resulted from the robotexting by Defendant and its third parties.

179.    Defendant is jointly and severally liable for the resulting damage caused by its third parties.

### "ON BEHALF OF" LIABILITY

180.    Section 227(c)(5) of the TCPA specifies that a person who has received more than one telephone call within any 12-month period "by or on behalf of the same entity" in violation of the regulations promulgated by the Federal Communications Commission may bring an action based on such violation to enjoin further calls or recover damages.

181.    The third parties sent robotexts in violation of the FCC's regulations under 47 C.F.R. § 64.1200(c) and (d) to each Plaintiff on behalf of Defendant.

### VIOLATIONS OF NORTH CAROLINA STATE LAW

182.    Each of Defendant's telemarketing text messages to Plaintiff Powers using an automatic telephone dialing system violated N.C. Gen. Stat § 75-104(a).

183.    For violations of N.C. Gen. Stat. § 75-104(a), Plaintiff Powers is entitled to recover $500 for the first violation, $1,000 for the second violation and $5,000 for the third and any other violation that occurs within two years of the first violation.

184.    Because the text messages to Plaintiff Powers did not state clearly the identity of the telephone solicitor and identify the individual making the telephone solicitation at the beginning of the solicitation, Defendant's text messages to Plaintiff Powers violated N.C. Gen. Stat. § 75-102(c)(1).

185.    For violations of N.C. Gen. Stat. § 75-102(c)(1), Plaintiff Powers is entitled to recover $500 for the first violation, $1,000 for the second violation and $5,000 for the third and any other violation that occurs within two years of the first violation.

186.    North Carolina General Statute § 75-102(a) prohibits making "a telephone solicitation to a telephone subscriber's telephone number if the telephone subscriber's telephone number appears in the latest edition of the "Do Not Call" Registry." N.C. Gen. Stat. § 75-102(a).

187.    Plaintiff Powers' number was on the National Do-Not-Call Registry prior to the text messages.

188.    Pursuant to N.C. Gen. Stat. §75-105(b)(2), Plaintiff Powers is entitled to recover $500 for the first violation, $1,000 for the second violation and $5,000 for the third and any other violation that occurs within two years of the first violation.

## VIOLATIONS OF TEXAS STATE LAW

189.    Pursuant to § 305.053(a) of the Texas Business & Commerce Code, a person who receives a communication that violates 47 U.S.C. § 227, or a regulation adopted under that provision, may bring an action against the person who originates the communication for an injunction, damages or both.

190.    As set forth above, Defendant violated 47 U.S.C. § 227 and several regulations adopted under that provision.

191.    Accordingly, Plaintiffs Groskopf, Evans and Bryant are entitled to a permanent injunction, and the greater of $500.00 for each violation or their actual damages for each call made by Defendants. *See* Tex. Bus. & Com. Code § 305.053(b).

192.    Plaintiffs Groskopf, Evans and Bryant are entitled to an additional $1500 per call if Defendant's actions are found to be knowing or intentional. *See* Tex. Bus. & Com. Code § 305.053(c).

193.    In addition, pursuant to § 302.101 of the Texas Business & Commerce Code, a seller is prohibited from engaging in telephone solicitation from a location in this state or to a

purchaser located in this state unless the seller obtains a registration certificate from the Office of the Secretary of State for the business location from which the solicitation is made.

194.    Defendant violated § 302.101 of the Texas Business & Commerce Code when its representatives engaged in continuous and repetitive telephone solicitation without obtaining a registration certificate from the Office of the Secretary of State.

195.    Accordingly, for violations of § 302.101 of the Texas Business & Commerce Code, Plaintiffs Groskopf, Evans and Bryant are entitled to an award of no more than $5,000 for each violation pursuant to § 302.302(a) of the Texas Business & Commerce Code.

196.    In addition, pursuant to § 302.302(d) of the Texas Business & Commerce Code, Plaintiffs are entitled to recover all reasonable cost of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.

## CLASS ACTION ALLEGATIONS

197.    Plaintiffs bring this action under Fed. R. Civ. P. 23 on behalf of three categories of proposed "Classes," the "TCPA Classes", the "North Carolina Classes" and the "Texas Classes" as defined as follows:

## THE TCPA CLASSES

Since August ___ 2017, Plaintiffs and all persons to whose cellular telephones Defendant One Technologies, LLC placed (or had placed on its behalf) a text message for the purpose of encouraging the purchase of Defendant's credit services, using identical, or substantially identical, equipment as the equipment used to place telemarketing text messages to Plaintiffs.

("TCPA 227(b) Class")

Since _____, Plaintiffs and all persons within the United States to whose telephone number Defendant One Technologies, LLC placed (or had placed on its behalf) two or more text messages for the purpose of encouraging the purchase of Defendant's credit services in a 12-month period when the telephone number to which the text messages were sent was on the National Do-Not-Call Registry at the time of the messages.

("TCPA 227(c) Class")

Since _____, Plaintiffs and all persons within the United States to whose telephone number Defendant One Technologies, LLC placed (or had placed on its behalf) two or more text messages for the purpose of encouraging the purchase of Defendant's credit services in a 12-month period.

("TCPA Policy Class")

## NORTH CAROLINA CLASSES

Since _____, Plaintiff Powers and all residents of the State of North Carolina to whose telephone number Defendant One Technologies, LLC placed (or had placed on its behalf) a text message for the purpose of encouraging the purchase of Defendant's credit services when the telephone number to which the text was sent was on the National Do-Not-Call Registry at the time of the messages.

("NC 75-102(a) Class").

Since _____, Plaintiff Powers and all residents of the State of North Carolina to whose number Defendant One Technologies, LLC placed (or had placed on its behalf) a text message for the purpose of encouraging the purchase of Defendant's credit services that did not identify the sender.

("NC 75-102(c)(1) Class")

Since _____, Plaintiff Powers and all residents of the State of North Carolina to whose number Defendant One Technologies, LLC placed (or had placed on its behalf) a text message for the purpose of encouraging the purchase of Defendant's credit services, using identical, or substantially identical, equipment as the equipment used to place the text message to Plaintiff Powers.

("NC 75-104(a) Class")

## TEXAS CLASSES

Since August __, 2017, Plaintiffs Groskopf, Evans and Bryant and all residents of the State of Texas to whose telephone number Defendant placed (or had placed on its behalf) a text message for the purpose of encouraging the purchase of Defendant's credit services when Defendant did not hold a registration certificate as required by Tex. Bus. & Com. Code § 302.101.

("Texas § 302.101 Class").

Since August __, 2017, Plaintiffs Groskopf, Evans and Bryant and all residents of the State of Texas to whose telephone number Defendant: placed (or had placed on

its behalf) a text message in violation of 47 U.S.C. § 227 and the regulations found at 47 C.F.R. § 64.1200.

("Texas § 305.053 Class")

(The TCPA Classes, North Carolina Classes and Texas Classes are collectively referred to herein as the "Classes.")

198.     Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

199.     The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

200.     The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant and third parties maintain written and electronically stored data showing:

    a.   The time period(s) during which Defendant placed its text messages;

    b.   The telephone numbers to which Defendant placed its text messages;

    c.   The telephone numbers for which Defendant had prior express written consent;

    d.   The purposes of such text messages;

    e.   The names and addresses of Class members.

201.     The Classes are comprised of hundreds, if not thousands, of individuals nationwide.

202.     There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

a.  Whether Defendant sends telemarketing text messages or has them sent on its behalf;

b.  Whether Defendant obtains prior express written consent;

c.  Whether Defendant or someone acting on its behalf sends text messages using an automatic telephone dialing system;

d.  Whether Defendant or the entity with which it contracts to send its messages sends solicitation text messages to telephone numbers registered on the National Do-Not-Call Registry;

e.  Whether Defendant had the requisite registration certificate as required by Tex. Bus. & Com. Code § 302.101 when making telephone solicitations;

f.  Whether Plaintiff and the Classes were damaged thereby, and the extent of damages for such violations; and

g.  Whether Defendant should be enjoined from engaging in such conduct in the future.

203.    Plaintiffs' claims are typical of the claims of the Members of the Classes in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

204.    Plaintiffs and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Defendant's unwanted calls, lost space on their devices, and suffered a nuisance and an invasion of their privacy.

205.    Plaintiffs have no interests antagonistic to, or in conflict with, the Classes.

206.    Plaintiffs will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent them and the Classes.

28

207.    Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

208.    The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

209.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

210.    Common questions will predominate, and there will be no unusual manageability issues.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii)**
**(On Behalf of Plaintiffs and the TCPA 227(b) Class)**

211.    Plaintiffs and the proposed TCPA 227(b) Class incorporate the foregoing allegations as if fully set forth herein.

212.    Defendant sent, or had sent on its behalf, telemarketing text messages to Plaintiffs' and TCPA 227(b) Class Members' telephone numbers without prior express written consent.

213.    Plaintiffs' and TCPA 227(b) Class Member's telephone numbers are each assigned to a cellular telephone service.

214.    As alleged, these text messages all used an "automatic telephone dialing system."

215.    The text messages were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

216.    Plaintiffs and TCPA 227(b) Class Members are entitled to an award of $500 in statutory damages for each text message, pursuant to 47 U.S.C. § 227(b)(3)(B).

217.    Plaintiffs and TCPA 227(b) Class Members are entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(b)(3).

## SECOND CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c)
### (On Behalf of Plaintiffs and the TCPA 227(c) Class)

218.    Plaintiffs and the proposed TCPA 227(c) Class incorporate the foregoing allegations as if fully set forth herein.

219.    Defendant sent, or had sent on its behalf, text messages constituting telephone solicitations to Plaintiffs' and TCPA 227(c) Class Members' telephone numbers.

220.    Plaintiffs' and TCPA 227(c) Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the text messages.

221.    Plaintiffs and TCPA 227(c) Class Members each received two or more such text messages in a 12-month period.

222.    Plaintiffs and TCPA 227(c) Class Members are entitled to an award of $500 in statutory damages for each text message pursuant to 47 U.S.C. § 227(c)(5).

223.    Plaintiffs and TCPA 227(c) Class Members are entitled to an award of treble damages in an amount up to $1,500 for each text message made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

## THIRD CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c), 47 C.F.R. § 64.1200(d)
### (On Behalf of Plaintiffs Johnson and Groskopf and the TCPA Policy Class)

224.    Plaintiffs Johnson and Groskopf and the proposed TCPA Policy Class incorporate the foregoing allegations as if fully set forth herein.

225.     The TCPA requires any part that is engaged in telemarketing instate and maintain a written internal do-not-call policy.  47 C.F.R. § 64.1200(d).

226.     Defendant violated the TCPA by not having sufficient internal do-not-call policies, by not following or honoring the policies it did have, and/or by not sufficiently ensuring that those making calls on its behalf did the same—including by failing to actually honor do-not-call requests made by Plaintiffs Johnson and Groskopf and other members of the TCPA Policy Class.

227.     As a result of these violations, Plaintiffs Johnson and Groskopf and the TCPA Policy Class Members were damaged by Defendant's violations, in that they received non-privileged and unsolicited telemarketing calls that invaded their privacy.

228.     Plaintiffs Johnson and Groskopf and TCPA Policy Class Members are entitled to an award of $500 in statutory damages for each text message pursuant to 47 U.S.C. § 227(c)(5).

229.     Plaintiffs Johnson and Groskopf and TCPA Policy Class Members are entitled to an award of treble damages in an amount up to $1,500 for each text message made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

**FOURTH CAUSE OF ACTION**
**Violations of N.C. Gen. Stat. § 75-102(a)**
**(On Behalf of Plaintiff Powers and the NC 75-102(a) Class)**

230.     Plaintiff Powers and the proposed NC 75-102(a) Class incorporate the foregoing allegations as if fully set forth herein.

231.     Defendant sent, or had sent on its behalf, text messages constituting telephone solicitations to Plaintiff Powers' and NC 75-102(a) Class Members' telephone numbers.

232.     Plaintiff Powers' and NC 75-102(a) Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the text messages.

233.    Plaintiff Powers and NC 75-102(a) Class Members are entitled to an award of $500 in statutory damages for the first violation pursuant to N.C. Gen. Stat. § 75-105(b)(2).

234.    Plaintiff Powers and NC 75-102(a) Class Members are entitled to an award of $1,000 in statutory damages for the second violation pursuant to N.C. Gen. Stat. §75-105(b)(2).

235.    Plaintiff Powers and NC 75-102(a) Class Members are entitled to an award of $5,000 in statutory damages for the third violation and any other violation that occurs within two (2) years of the first violation.

**FIFTH CAUSE OF ACTION**
**Violations of N.C. Gen. Stat. § 75-102(c)(1)**
**(On Behalf of Plaintiff Powers and the NC 75-102(c)(1) Class)**

236.    Plaintiff Powers and the proposed NC 75-102(c)(1) Class incorporate the foregoing allegations as if fully set forth herein.

237.    Defendant sent, or had sent on its behalf, text messages constituting telephone solicitations to Plaintiff Powers' and NC 75-102(c)(1) Class Members' telephone numbers.

238.    The text messages did not state clearly the identity of the telephone solicitor and identify the individual making the telephone solicitation at the beginning of the telephone solicitation in violation of N.C. Gen. Stat. § 75-102(c)(1).

239.    Plaintiff Powers and NC 75-102(c)(1) Class Members are entitled to an award of $500 in statutory damages for the first violation pursuant to N.C. Gen. Stat. § 75-105(b)(2).

240.    Plaintiff Powers and NC 75-102(c)(1)  Class Members are entitled to an award of $1,000 in statutory damages for the second violation pursuant to N.C. Gen. Stat. §75-105(b)(2).

241.    Plaintiff Powers and NC 75-102(c)(1)  Class Members are entitled to an award of $5,000 in statutory damages for the third violation and any other violation that occurs within two (2) years of the first violation.

## SIXTH CAUSE OF ACTION
### Violations of N.C. Gen. Stat. § 75-104(a)
### (On Behalf of Plaintiff Powers and the NC 75-104(a) Class)

242.    Plaintiff Powers and the proposed NC 75-104(a) Class incorporate the foregoing allegations as if fully set forth herein.

243.    Defendant sent, or had sent on its behalf, telemarketing text messages to Plaintiff Powers' and NC 75-104(a) Class Members' telephone numbers.

244.    These text messages all used an "automatic dialing and recorded message player."

245.    Plaintiff Powers and NC 75-104(a) Class Members are entitled to an award of $500 in statutory damages for the first violation pursuant to N.C. Gen. Stat. § 75-105(b)(2).

246.    Plaintiff Powers and NC 75-104(a) Class Members are entitled to an award of $1,000 in statutory damages for the second violation pursuant to N.C. Gen. Stat. §75-105(b)(2).

247.    Plaintiff Powers and NC 75-104(a) Class Members are entitled to an award of $5,000 in statutory damages for the third violation and any other violation that occurs within two (2) years of the first violation.

## SEVENTH CAUSE OF ACTION
### Violations of Texas § 302.101 Class
### (On Behalf of Plaintiff Groskopf, Evans, Bryant and the Texas § 302.101 Class)

248.    Plaintiffs Groskopf, Evans, Bryant and the proposed Texas § 302.101 Class incorporate the foregoing allegations as if fully set forth herein.

249.    Defendant failed to obtain a registration certificate from the Office of the Secretary of State pursuant to violated § 302.101 of the Texas Business and Commerce Code.

250.    Defendant placed, or had placed on its behalf, telephone solicitations to Plaintiffs Groskopf, Evans, Bryant and Texas § 302.101 Class Members' telephone numbers.

251. Defendant's telephone solicitations were made from a location in Texas or to Plaintiffs Groskopf, Evans, Bryant and Texas § 302.101 Class Members located in Texas.

252. Plaintiffs Groskopf, Evans, Bryant and Texas § 302.101 Class Members are entitled to an award of up to $5,000.00 for each violation and all reasonable cost of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.

## EIGHTH CAUSE OF ACTION
### Violations of Texas § 305.053 Class
### (On Behalf of Plaintiffs Groskopf, Evans, Bryant and the Texas § 305.053 Class)

253. Plaintiffs Groskopf, Evans, Bryant and the proposed Texas § 305.053 Class incorporate the foregoing allegations as if fully set forth herein.

254. Defendant placed, or had placed on its behalf, autodialed telemarketing telephone text messages to Plaintiffs Groskopf, Evans, Bryant and Texas § 305.053 Class Members' telephone numbers.

255. Each of these calls violated 47 U.S.C. § 227(b) and/or 47 U.S.C. § 227(c).

256. Further, Defendant placed calls for the purpose of making a sale to Plaintiffs Groskopf, Evans, Bryant and Texas § 305.053 Class Members' telephone numbers without their consent.

257. Plaintiffs Groskopf, Evans, Bryant and Texas § 305.053 Class Members are entitled to:

   a. a permanent injunction to prevent any further violations of the Texas Business & Commerce Code, Chapter 305;

   b. the greater of $500 for each violation or Plaintiff's and Texas § 305.053 Class Members' actual damages (*see* Tex. Bus. & Com. Code §304.053(b);

34

    **c.**   the greater of $1,500 for each violation or Plaintiffs Groskopf, Evans, Bryant's and Texas § 305.053 Class Members' actual damages for each call made knowingly or intentionally (*see* Tex. Bus. & Com. Code §304.053(c).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, prays for the following relief:

A.    An order certifying the Classes as defined above, appointing Plaintiffs as the representatives of the Classes and appointing their counsel as Class Counsel;

B.    An order declaring that Defendant's actions, as set out above, violate 47 U.S.C. §§ 227(b) and (c);

C.    An order declaring that Defendant's actions, as set out above, violate N.C. Gen. Stat. §§ 75-102(a), 75-102(c)(1) and 75-104(a).

D.    An order declaring that Defendant's actions, as set out above, violate Tex. Bus. & Com. Code §§ 302.101 and 305.053.

E.    An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

F.    An award of statutory damages;

G.    An award of treble damages;

H.    An award of reasonable attorneys' fees and costs; and

I.    Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

**Dated:** September 1, 2021

*s/ Chris R. Miltenberger*
Chris Miltenberger, Esquire
The Law Office of Chris R. Miltenberger,
PLLC
1360 N. White Chapel, Suite 200
Southlake, Texas 76092
Tel: (817) 416-5060
Fax: (817) 416-5062
chris@crmlawpractice.com

*s/ Jeremy M. Glapion*
Jeremy M. Glapion, Esquire
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.965.8006
jmg@glapionlaw.com
(*Pro Hac Vice* to be filed)

*s/ Max S. Morgan*
Max S. Morgan, Esquire
Eric H. Weitz, Esquire
**THE WEITZ FIRM, LLC**
1528 Walnut Street, 4th Floor
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com
eric.weitz@theweitzfirm.com
(*Pro Hac Vice* to be filed)

*/s Ari Marcus*
Ari Marcus, Esq.
Marcus & Zelman, LLC
701 Cookman Avenue, Suite
Asbury Park, NJ 07712
Tel: (732) 695-3282
ari@marcuszelman.com
Attorneys for Plaintiff
(*Pro Hac Vice* to be filed)